IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOTT CISCO,

        Petitioner,

                               Case No. 2:14-cv-02025
    v.                          Judge Frost
                                 Magistrate Judge King

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

        Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* ECF No. 1, Respondent's *Return of Writ*, ECF No. 5, Petitioner's *Reply*, ECF No. 8, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was originally charged by indictment with ten criminal offenses including three counts of kidnapping, one count of abduction, and six counts of rape. All but two counts were dismissed by appellee: Count Four, abduction, a violation of R.C. 2905.02(A)(2), a felony of the third degree, and Count Ten, rape, a violation of R.C. 2907.02(A), a felony of the first degree.
>
> The Change–of–Plea Hearing: Appellant's Allocution
>
> On January 16, 2013, appellant appeared before the Delaware County Court of Common Pleas to enter pleas of guilty to Counts Four and Ten pursuant to a Crim.R. 11(F) negotiated plea agreement. The trial court discussed the rights appellant waived by changing his pleas and advised appellant the issue of merger would be determined at sentencing, noting the parties did not agree whether the rape and abduction offenses merged. Appellant stated he understood this meant he could be sentenced separately upon each count; his "exposure" on the rape count

was a maximum of eleven years in prison and he faced an additional maximum sentence of thirty-six months on the count of abduction.

The trial court also stated appellant would be referred for a presentence investigation (P.S.I.).

The trial court next gave appellant an opportunity for allocution. Appellant stated on October 25, 2012, after meeting the victim online, he picked her up in Indianapolis and drove her to his home in Sunbury, Delaware County, Ohio. Once at his home, appellant claimed the victim disrobed and he bound her ankles and wrists and gagged her. Appellant stated he raped the victim vaginally and anally, both digitally and with objects. He stated the victim said "no" but he disregarded her protests. Appellant claimed the victim was bound for a total of approximately 15 minutes; he then released her and she went to the bathroom and cleaned herself up. Appellant admitted he knew the victim was 17 years old. This statement concluded appellant's allocution.

The P.S.I.

The following facts are adduced from the P.S.I., which is ordinarily a confidential document but which the parties have made part of the record in this case. The trial court indicated facts in the P.S.I. would be taken into account in determining whether the rape and abduction offenses merged for sentencing.

On October 25, 2012, around 2:15 p.m., the Sunbury Police Department received a call from the 17–year–old victim and responded to appellant's apartment. Upon arrival, police found the victim in a state of panic; she stated she had been kidnapped by appellant and tied up at his residence while he went to work. She stated she broke free and called for help after finding her clothing and cell phone which appellant had hidden in the back yard.

The victim told police she met appellant online in a sexual chatroom and snuck out of her home in Indianapolis to meet him; although her online profile said she was 18, the victim told appellant she was really 17. She rode with appellant back to his home in Ohio. Upon arrival, appellant gave her alcohol. The victim stated appellant made her take her clothes off and call him "master," then bound her, gagged her, and penetrated her vaginally and anally, both digitally and with objects. The victim stated appellant also made her perform oral sex on him that night and the next morning. The victim described in detail various sexual acts appellant performed upon her. She stated he gave her a "safe word" to say if she wanted him to stop. She said the safe word several times but appellant didn't stop.

The victim stated appellant bound her again in the bedroom, hid her clothing and cell phone in the backyard, and left for work the next day. She was subsequently able to escape, find her clothes and phone, and call police.

2

Upon entering the residence and finding the victim, police conducted a protective sweep. They discovered the residence in disarray with alcoholic beverage containers on the counter; in the bedroom, they observed clothing, bedding, "sexual devices lying out, and duct tape in two different spots wrapped around a metal stand at the head of the bed."

Appellant told police he met the victim on the internet, brought her to Ohio, drank beer with her, and watched a movie. He stated she slept on the couch and he slept in the bedroom; further, "if she had any injuries, she did it to herself, and that he didn't do anything to her." Appellant stated he went to work at 8:00 a.m. the next day, learned the Indianapolis police were looking for the victim as a runaway, returned home, and told her to turn herself in before returning to work.

Appellant told the Court Investigating Officer he met the victim on a dating website and she told him she wanted to move. He picked her up and brought her to Ohio. They watched T.V. and ate dinner; later they "became intimate." In the past they had discussed "kinky encounters" and the victim voluntarily submitted to being bound, gagged, and penetrated as described supra. Appellant continued, "At a point in time during this, she decided she wanted to stop. No meant no which I disregarded at that time. The continued (sic ) for 5–8 minutes longer before I stopped & untied her."

The Sentencing Hearing: Trial Court Declines Merger of Offenses

Appellant appeared before the trial court for sentencing on March 13 and March 15, 2013. The trial court inquired whether the parties objected to the facts as set forth in the P.S.I.; appellee did not, but appellant argued the facts were pulled from the police report and should not be relied upon to determine whether the offenses merge. Appellant denied he tied up the victim while he went to work.

The trial court questioned whether the victim's statements in the P.S.I. could be considered for sentencing purposes. The victim was not present in the courtroom for sentencing and appellee indicated she was not willing to voluntarily return to Ohio to testify for sentencing purposes. Appellant argued the only facts properly before the trial court were those admitted by him during allocution.

After argument, the trial court decided the P.S.I. could be used for sentencing purposes. Pursuant to R.C. 2941.25, in light of the victim's statements contained in the P.S.I. about the facts of the offense, to wit, appellant leaving her bound before leaving for work, the trial court concluded the offenses of rape and abduction did not merge.

Appellant was thereupon sentenced to a prison term of 11 years for the rape offense and a consecutive term of 36 months for the abduction offense.

3

Appellant now appeals from the judgment entries of his convictions and sentences.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT VIOLATED PRINCIPLES OF DOUBLE JEOPARDY AND R.C. 2941.25 BY FAILING TO MERGE RAPE AND ABDUCTION BASED ON HEARSAY FROM A PRESENTENCE INVESTIGATION REPORT."

"II. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING MAXIMUM SENTENCES CONSECUTIVELY ON BOTH COUNTS."

*State v. Cisco*, No. 13CAA 04 0026, 2013 WL 6564322, at *1-3 (Ohio App. 5th Dist. Dec. 9, 2013). On December 9, 2013, the state appellate court affirmed the judgment of the trial court. *Id*. On May 28, 2014, the Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Cisco*, 139 Ohio St.3d 1406 (2014).

On October 23, 2014, Petitioner filed the *Petition*, alleging as follows:

1. Cruel & Unusual Punishment 8th Amendment Equal Protection

   Sentencing was rendered post H.B. 86, and required fact-finding was not on the record. Petitioner, a first-time offender, was denied the required findings and equal protection as mandated by this Court and the Ohio General Assembly.

2. Double Jeopardy

   At the plea hearing, Petitioner did not waive his constitutional right of the protections of double jeopardy as afforded constitutionally and as provided in R.C. § 2941.25.

3. Ineffective assistance of Counsel

   Counsel ignored the affirmative defenses and evidence, including the provisions of truth in sentencing pursuant to H.B. 86 for first time offenders.

Respondent contends that Petitioner's claims are procedurally defaulted or offer no basis for relief.

4

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.; Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000*); Coleman*, 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default operates as a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district court to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. [Finally, if] the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner

may still obtain review of his claims on the merits if he establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138 (internal quotations omitted). "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or an outright failure to appeal. *Id* at 750.

However, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)). Petitioners who cannot establish cause and prejudice may nevertheless obtain review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle*, 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In the case presently before this Court, Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to raise affirmative defenses and present evidence relating to H.B. 86 and the sentencing of first time offenders; Petitioner also alleges that his sentence violates the Eighth Amendment and denies him equal protection. Petitioner failed to raise these claims on direct appeal, where he was represented by an attorney who was not his trial counsel. This failure constitutes a clear procedural default in light of Ohio's

6

requirement that errors that appear on the face of the record must be raised on direct appeal or will be deemed forfeited; the assertion of such claims by other means would be barred by Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

The procedural rule barring petitioner's claims for relief constitutes an adequate and independent state ground for denying relief. The requirement that all available claims be asserted in the first appellate proceeding serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. The doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions. Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole; State v. Ishmail; State v. Perry.*

Petitioner may obtain review of his claims on the merits if he can establish cause for this procedural default as well as actual prejudice from the alleged constitutional violations. The "existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; see also *Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003) (same) (citing *Coleman*, 501 U.S. at 753). Petitioner has failed to establish cause for his procedural default.

Moreover, the Court's independent review of the record fails to indicate that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that the court may grant the writ even in the absence of a showing of cause for the procedural default. *See Murray*, 477 U.S. at 496.

7

Respondent also contends that Petitioner has waived his remaining claims by failing to present them to the Ohio Supreme Court.  In his appeal to the Ohio Supreme Court, Petitioner alleged that the lower courts "abused their discretion in failing to adhere to the mandates of the General Assembly."  (ECF 5-1, PageID# 153).  He argued, *inter alia,* that his convictions on rape and abduction constituted allied offenses of similar import and violated the Double Jeopardy Clause, and he complained that he had not been informed of his rights under House Bill 86, or of its application to a first time offender, and that the trial court had failed to make the findings required under state law prior to imposing consecutive terms of incarceration.  (PageID# 158.)  Liberally construing Petitioner's pleadings, this Court concludes that these claims are those also raised before the Ohio Court of Appeals and are therefore properly before this Court for federal habeas corpus review.

**Merits**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸻ U.S. ⸻, ⸻, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct:

8

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, ——U.S. ——, ——, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520-21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster*, 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

**Double Jeopardy**

Petitioner contends that his separate convictions and sentences on charges of rape and abduction violate the Double Jeopardy Clause and Ohio's statutes on allied offenses of similar import.[1]  The state appellate court rejected this claim as follows:

---

1  A federal habeas court may not consider a claim alleging merely a violation of an Ohio statute. Thus, to the extent that Petitioner contends that his convictions and sentence violate O.R.C. § 2941.25, this claim is not cognizable on

[A]ppellant argues the trial court erred in failing to merge the offenses of rape and abduction for sentencing.

R.C. 2941.25 codifies the judicial doctrine of merger and states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (A) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

A trial court is required to merge allied offenses of similar import at sentencing. *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, 922 N.E.2d 923, ¶ 27. The doctrine of merger as codified by the statute implements the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Ohio Const. Art. I, Sec. 10, which prohibit punishing an offender twice for the same offense. The statute requires merger of allied offenses of similar import into a single conviction for the purpose of sentencing, thereby preventing multiple punishments. The defendant bears the burden of proving an entitlement to merger at sentencing pursuant to R.C. 2941.25. *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

Appellant entered a negotiated plea. When the plea agreement is silent on the issue of allied offenses of similar import the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense; if a trial court fails to merge allied offenses of similar import, the defendant has the right to appeal the sentence. *State v. Underwood,* 124 Ohio St.3d 365, 371, 2010–Ohio–1, 922 N.E.2d 923 (2010).

The specific issue before us is whether the trial court may properly consider the information contained in the P.S.I. in determining whether offenses merge for sentencing. Appellant entered a guilty plea. The facts before the court came from appellant's allocution and the P.S.I. Appellant contends the trial court could not properly take into account the facts stated in the P.S.I. and was limited to the information contained in his allocution. We disagree and find the trial court properly considered the facts contained within the P.S.I in weighing whether to merge the offenses of rape and abduction.

---

federal habeas review.  *See* 28 U.S.C. § 2254(a).  However, "this Court has previously held that a 2941.25 claim is sufficient to preserve a Double Jeopardy claim."  *Cody v. Jeffries*, No. 2:10-cv-974, 2013 WL 170268, at *4 (S.D. Ohio Jan. 16, 2013)(citations omitted).

The trial court is statutorily required to take into account the record of the case, in addition to any victim impact statement and P.S.I. R.C. 2929.19 states the following regarding the sentencing hearing:

> (A) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony and before resentencing an offender who was convicted of or pleaded guilty to a felony and whose case was remanded pursuant to section 2953.07 or 2953.08 of the Revised Code. At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative in accordance with section 2930.14 of the Revised Code, and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the verdict of the jury or finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
>
> (B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.
>
> (2) Subject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
>
> (a) Impose a stated prison term and, if the court imposes a mandatory prison term, notify the offender that the prison term is a mandatory prison term;
>
> (b) In addition to any other information, include in the sentencing entry the name and section reference to the offense or offenses, the sentence or sentences imposed and whether the sentence or sentences contain mandatory prison terms, if sentences are imposed for multiple counts whether the sentences are to be served concurrently or consecutively, and the name and section reference of any specification or specifications for which sentence is imposed and the sentence or sentences imposed for the specification or specifications;

Defendants are permitted to read portions of P.S.I.s and to comment upon alleged factual inaccuracies; within its discretion, the trial court may even permit the

defendant to introduce testimony to counter alleged factual inaccuracies. R.C. 2951.03(B) states in pertinent part:

> (B)(1) If a presentence investigation report is prepared pursuant to this section, section 2947.06 of the Revised Code, or Criminal Rule 32.2, the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report, except that the court shall not permit the defendant or the defendant's counsel to read any of the following:
>
> (a) Any recommendation as to sentence;
>
> (b) Any diagnostic opinions that, if disclosed, the court believes might seriously disrupt a program of rehabilitation for the defendant;
>
> (c) Any sources of information obtained upon a promise of confidentiality;
>
> (d) Any other information that, if disclosed, the court believes might result in physical harm or some other type of harm to the defendant or to any other person.
>
> (2) Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report.
>
> (3) If the court believes that any information in the presentence investigation report should not be disclosed pursuant to division (B)(1) of this section, the court, in lieu of making the report or any part of the report available, shall state orally or in writing a summary of the factual information contained in the report that will be relied upon in determining the defendant's sentence. The court shall permit the defendant and the defendant's counsel to comment upon the oral or written summary of the report.
>
> (4) Any material that is disclosed to the defendant or the defendant's counsel pursuant to this section shall be disclosed to the prosecutor who is handling the prosecution of the case against the defendant.
>
> (5) If the comments of the defendant or the defendant's counsel, the testimony they introduce, or any of the other information they

introduce alleges any factual inaccuracy in the presentence investigation report or the summary of the report, the court shall do either of the following with respect to each alleged factual inaccuracy:

(a)Make a finding as to the allegation;
(b)Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant.

We are not persuaded by appellant's argument that the statements contained in the P.S.I. are hearsay and therefore untrustworthy. The Ohio Rules of Evidence do not apply to sentencing hearings. Evid.R. 101(C)(3). Moreover, appellant has the opportunity outlined in the statute, *supra*, to bring alleged inaccuracies to the court's attention. The burden of proof regarding any inaccuracy in the P.S.I. is on the defendant who alleges that the report is inaccurate. R.C. 2951.03(B)(2), *supra*. Appellant made no such request nor offered any evidence beyond his self-serving allocution to dispute the facts in the report, which the trial court elected to accept. Appellant has failed to demonstrate the trial court abused its discretion in doing so. *State v. Sims*, 184 Ohio App.3d 741, 746, 2009–Ohio–5751, 922 N.E.2d 298 (2nd Dist.Greene).

R.C. 2941.25 is a sentencing statute. *State v. May*, 11th Dist. Lake No.2010–L–131, 2011–Ohio–5233, ¶ 77, *appeal not allowed*, 131 Ohio St.3d 1458, 2012–Ohio–648, 961 N.E.2d 1137, citing *State v. Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453, (8th Dist.1980), paragraph one of the syllabus. The trial court is required to rely upon the entire record in sentencing defendant, including determining whether offenses merge.

The trial court does not err in relying upon facts contained in a P.S.I. in sentencing a defendant. *State v. Steimle*, 8th Dist. Cuyahoga No. 82183, 2003–Ohio4816, ¶ 14, *appeal not allowed*, 101 Ohio St.3d 1424, 2004–Ohio–123, 802 N.E.2d 155; *State v. Gunnell*, 10th Dist. Franklin Nos. 11AP–811, 11AP–814, 11Ap–812, 11AP–815, 11AP–813, 2012–Ohio–1614, ¶ 14–15, *appeal not allowed*, 132 Ohio St.3d 1485, 2012–Ohio–3334, 971 N.E.2d 962; *State v. Dudenas,* 8th Dist. Cuyahoga No. 81461, 2003–Ohio–1000, ¶ 9, *abrogated on other grounds by State v. Norman*, 8th Dist. Cuyahoga No. 91302, 2009–Ohio–4044. We conclude the trial court does not err in relying upon the P.S.I. in deciding whether to merge offenses for pursuant to R.C. 2941.25.

Appellant's position is that the victim was not bound when he left for work, the critical factor in the trial court's sentencing decision. The trial court advised the parties this detail was crucial to the merger decision but appellant offered no evidence beyond his self-serving allocution. If we were to accept appellant's argument, he would have the benefit of entering guilty pleas to two offenses and then by virtue of his allocution, dictating the facts upon which the trial court

makes its merger decision, a position which would give appellee no incentive to offer appellant a plea in the first place. Moreover, such a conclusion would eliminate the sentencing discretion of the trial court.

The trial court did not err in relying upon the P.S.I. in assessing whether the offenses of rape and abduction were allied offenses of similar import which merged for sentencing. We further agree with the trial court's decision that under the facts of this case, the offenses do not merge.

In *State v. Johnson*, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. 128 Ohio St.3d 1405, 2010–Ohio–6314. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson, supra*.

Appellant was indicted upon, convicted of, and sentenced upon one count of rape pursuant to R.C. 2907.02(A) and one count of abduction pursuant to 2905.02(A)(2). Appellant argues the trial court erred in failing to merge these offenses for purposes of sentencing; we disagree.

As the trial court pointed out, separate offense and separate animus arise from the fact that appellant bound the victim when he left for work the next day. In other words, he didn't commit the abduction solely for the purpose of accomplishing the rape. Appellant's actions constituted both separate conduct and separate animus under these circumstances. *Id*. Appellant was properly convicted of and sentenced upon two separate offenses.

We find each of these offenses was committed with separate conduct and a separate animus, and the trial court properly declined to merge the offenses for sentencing. Appellant's first assignment of error is overruled.

*State v. Cisco*, 2013 WL 6564322, at *3-7.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states

through the Fourteenth Amendment, provides that no person shall "be subject for the same

offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been

interpreted as protecting criminal defendants from successive prosecutions for the same offense

after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to address the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

Petitioner was convicted on a charge of rape, in violation of O.R.C. § 2907.02(A).  That statute provides in relevant part:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> ***
>
> (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

Petitioner was also convicted on a charge of abduction, in violation of O.R.C. § 2905.02(A)(2). That statute provides in relevant part:

> (A) No person, without privilege to do so, shall knowingly do any of the following:
>
> ***
>
> (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]

Plainly, these offenses do not contain duplicative elements.  Although Petitioner argues that only one act occurred, as a part of a continuing course of conduct, the state trial court found to the contrary and, based on statements of the victim, specifically found that the offenses involved two separate acts.  The victim stated that Petitioner bound, gagged, and raped her, and then bound her again and left her in his apartment while he went to work.  The findings of the state appellate court are presumed to be correct, and Petitioner has failed to meet his burden of rebutting the correctness of those findings.  Nothing prevented the trial court from accepting as true the victim's statements rather than Petitioner's statements at allocution.

Petitioner's claim that he was convicted and sentenced in violation of the Double Jeopardy Clause offers no basis for relief.

Petitioner also complains that the trial court failed to make factual findings required under Ohio law prior to the imposition of consecutive terms of incarceration.  The state appellate court rejected this claim as follows:

> [A]ppellant argues the trial court erred in imposing the maximum sentence.
>
> Appellant acknowledges the prison terms of eleven years and 36 months are within the statutory range for these offenses but asserts the trial court failed to "properly consider the statutory purposes and factors of statutory sentencing."
>
> In *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If the first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. *Id.* We have recognized that "[w]here the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation." *State v. Firouzmandi*, 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶ 52.
>
> We first note that subsequent to the Ohio Supreme Court's *Foster* decision, "[t]he decision to impose the maximum sentence is simply part of the trial court's overall discretion in issuing a felony sentence and is no longer tied to mandatory fact-

finding provisions." *State v. Parsons*, 7th Dist. Belmont No. 12 BE 11, 2013–Ohio1281, ¶ 14.

Appellant also challenges the trial court's imposition of consecutive terms. 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-*Foster. See State v. Wells*, 8th Dist. Cuyahoga No. 98428, 2013–Ohio–1179, ¶ 11. These revisions to the felony sentencing statutes now require a trial court to make specific findings when imposing consecutive sentences. Nonetheless, "[a]lthough H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence." *State v. Bentley*, 3rd Dist. Marion No. 9–12–31, 2013–Ohio–852, ¶ 12, *citing State v. Frasca*, 11th Dist. Trumbull No.2011–T–0108, 2012–Ohio–3746, ¶ 57. The record must clearly demonstrate that consecutive sentences are not only appropriate, but are also clearly supported by the record. *See State v. Queer*, 5th Dist. Ashland No. 12–COA–041, 2013–Ohio–3585, ¶ 21.

R.C. 2929.14(C)(4) provides, in relevant part:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
>
> We note appellant asks us to disregard the victim's statements which are not favorable to his merger argument, *supra*, and to accept the victim's statements which are favorable to his maximum sentence argument. He argues the trial court abused its discretion in sentencing him to consecutive maximum terms upon one count of rape and one count of abduction because this offense began as "consensual dominant/submissive play" and appellant apologized at the sentencing hearing. We disagree with appellant's characterization of the record and note the ongoing trauma and distress experienced by the 17–year–old victim as evidenced by the P.S.I. and the victim impact statement. The trial court specifically noted a consecutive sentence was not disproportionate to appellant's conduct and was necessary to punish appellant and protect the public.
>
> Upon review, we find the trial court adequately made the findings required by R.C. 2929.14(C)(4) in considering appellant's sentence, and consecutive sentences in this matter are not unreasonable, arbitrary or unconscionable. In short, we have reviewed the record of this case and find the trial court did not abuse its discretion in sentencing appellant to consecutive maximum terms.

*State v. Cisco*, 2013 WL 6564322, at \*7-8 (footnote omitted).

Petitioner argues that the state trial court abused its discretion and failed to comply with Ohio law when it imposed maximum and consecutive terms of incarceration. This issue involves a matter of state law that does not provide a basis for relief. "'[F]ederal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 67 (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975)) (*per curiam*)(footnote omitted).

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
November 19, 2015